**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000056
29-OCT-2015
01:10 PM**

NO. CAAP-13-0000056

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
JOHN ALBERT WAGNER, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 11-1-001K)

SUMMARY DISPOSITION ORDER
(By:  Fujise and Leonard, JJ.,
with Nakamura, C.J., concurring separately.)

Defendant-Appellant John Albert Wagner, Jr. (Wagner),
appeals from the Judgment of Conviction and Sentence entered by
the Circuit Court of the Third Circuit (Circuit Court) on
November 19, 2012.[1]  This case arises out of the execution of a
search warrant conducted on December 23, 2010 at Wagner's
residence.

On appeal,[2] Wagner argues *pro se*[3] that the Circuit Court

---

[1]     The Honorable Elizabeth A. Strance presided.

[2]     Wagner did not file his appeal within thirty days after entry of
the November 19, 2012 judgment as required by Hawaiʻi Rules of Appellate
Procedure (HRAP) Rule 4(b)(1) and (3).  Instead, his notice of appeal was
filed on January 29, 2013.  The Circuit Court's minutes indicate that, on
December 19, 2012, the Circuit Court granted Wagner's request for extension of
time to file his appeal until February 8, 2013.  However, the Circuit Court
was not authorized to grant a continuance for filing a notice of appeal for
more than 30 days.  HRAP Rule 4(b)(5).

        Nevertheless, "[i]n criminal cases, [the Supreme Court of Hawaiʻi]
ha[s] made exceptions to the requirement that notices of appeal be timely
filed."  State v. Irvine, 88 Hawaiʻi 404, 407, 967 P.2d 236, 239 (1998); State
v. Allen, 2 Haw. App. 606, 612-13, 638 P.2d 338, 343 (1981).  Therefore, we
will address Wagner's appeal on the merits.

[3]     On November 25, 2013, after Wagner's appointed counsel, Teresa D.
Morrison (Morrison), filed an opening brief and the State filed its answering
(continued...)

erred when it (1) denied his motion to suppress evidence because (a) the search warrant was improper as to form; (b) probable cause to issue the warrant was lacking; (c) the executing officer did not satisfy the requirements of Hawaii Revised Statutes (HRS) § 803-37 (2014); and (d) the executing officer did not permit Wagner to be present during the search; (2) allowed presentation to the jury of Wagner's stipulation that he had a prior conviction; (3) limited his cross-examination of the police officer who led the investigation; (4) denied his motion to compel disclosure of the police informant's identity where there was testimony that a male individual was at Wagner's residence shortly before the execution of the warrant; (5) accepted the jury's guilty verdict when there was insufficient evidence to convict; (6) permitted biased jurors to be empaneled; (7) did not instruct the jury as to prior bad acts evidence prior to testimony; and (8) it abused its discretion. Wagner also claims (9) prosecutorial misconduct; and (10) that he did not have effective assistance of counsel.

After a careful review of the issues raised and the arguments made by the parties, the record on appeal, and the relevant legal authority, we resolve Wagner's issues as follows and affirm.

## 1. THE MOTION TO SUPPRESS EVIDENCE.

Wagner's points of error A-D challenge the Circuit Court's decision to deny his Motion To Suppress. Although Wagner does not challenge any of the Circuit Court's findings of fact or

---

[3](...continued)
brief, Morrison filed on Wagner's behalf, the "Second Motion to Withdraw as Counsel" based in part on Wagner's claim Morrison provided ineffective assistance of counsel. On December 18, 2013, this court granted Wagner's motion, remanding this case to the Circuit Court to hear and determine a motion for withdrawal and substitution of counsel. In the meanwhile, Wagner, without leave of court, filed his December 17, 2013 "Pro Se Supplemental Brief to Openning [sic] Brief of Defendant/Appellate [sic]."

On January 22, 2014, the Circuit Court excused Morrison as attorney of record but appointed her as standby counsel for the purpose of assisting Wagner. By order dated February 24, 2014, and amended by order of March 12, 2014, this court authorized Wagner to file an amended supplemental brief to replace the unauthorized December 17, 2013 Supplemental brief. This court eventually extended the time for filing Wagner's amended supplemental brief to August 8, 2014. On July 22, 2014, Wagner filed his "Opening Brief" (Opening Brief) *pro se*. We therefore address Wagner's issues as presented in his Opening Brief.

conclusions of law by citation to the Record on Appeal or quotation, he does identify the proceedings he believes are at issue by citation to the transcripts of hearings held on July 30, 2012 and December 28, 2011 giving some specificity to his arguments. The July 30, 2012 hearing concerned two motions to suppress. The first concerned Wagner's challenge to the execution of the search warrant. The second was based on his challenge to the form of the warrant. We address the latter first.

A.      Challenge to the search warrant's form.

Wagner argues that defects in the form of the search warrant rendered it void. Specifically, Wagner asserts that the "affidavit used to produce the search warrant does not bear the magistrate's official designation[4] nor is the affidavit notarized or impress [sic] with the seal of the court" and has only been rubber stamped with the word "SEAL." Wagner relies on HRS § 803-34 (2014)[5] and Hawai'i Rules of Penal Procedure (HRPP) Rule 41.[6]

---

[4]      Wagner cites here to Exhibit C, one of twenty-eight exhibits attached to his Opening Brief. However, as many, if not most of these exhibits appear to be excerpts of documents and in any event do not indicate whether they are part of the record on appeal by citation to the record, they will be disregarded, except in those instances where the exhibit bears indicia that it is an accurate copy of a document contained in the record. HRAP Rule 28(b)(10). For example, Exhibit C appears to be the first page of the Affidavit for Search Warrant, the last page of the warrant purporting to show the issuing judge's signature, and the nine-page "Affidavit of Officer Erich Jackson" (Officer Jackson) also labeled "Attachment 3." Wagner does not provide record citations to where these documents may be found. Rather, he states only that "[t]he affidavit provided from the discovery (HRPP rule 16) appears to be misleading (see exhibit C)  . . ." Therefore, Exhibit C will be disregarded.

[5]
        § 803-34  Contents. The warrant shall be in writing, signed by the magistrate, with the magistrate's official designation, directed to some sheriff or other officer of justice, and commanding the sheriff or other officer to search for and bring before the magistrate, the property of articles specified in the affidavit, to be disposed of according to justice, and also to bring before the magistrate for examination the person in whose possession the property or article may be found.

[6]      Rule 41.  Search and Seizure.

        . . . .

        (c) Issuance and Contents. A warrant shall issue only on an affidavit or affidavits sworn to before the judge and establishing the grounds for issuing a warrant.

Wagner does not support his argument with record references. Even if we were to consider Wagner's Exhibit C, it does not support Wagner's position that the warrant and/or application was defective as to form as it shows the applying officer was duly sworn before the judge, identified as a judge of the District Court of the Third Circuit. Finally, neither HRPP Rule 41 nor HRS § 803-34, upon which Wagner relies, requires a seal of any type be affixed to the magistrate's signature. Thus, Wagner has not shown the search warrant is defective as to matters of form.[7]

B.   **Probable cause for the issuance of the search warrant.**

Wagner argues that the search warrant was not supported by probable cause. Specifically, Wagner alleges (1) that the affiant did not corroborate the informant's information; (2) that neither the affiant nor informant were within the residence to observe contraband or paraphernalia; and (3) that there was no basis for the informant's conclusion regarding the location of objects sought.

Wagner does not dispute[8] that the affidavit in support of the search warrant averred that "the confidential informant has purchased methamphetamine at the instruction of your affiant on previous occasions. Your affiant has corroborated said information [through] police investigations and other independent means[]" as quoted by the Circuit Court during the December 28, 2011 hearing on his motion to suppress. Nor does he dispute that the affidavit averred the confidential informant participated in a controlled purchase of methamphetamine from Wagner. The Circuit Court also noted that the affidavit contained "statements

---

[7]   For the same reasons, we must reject Wagner's sub-argument that his constitutional rights under the fourth amendment to the United States Constitution and article I section 7 of the Hawai'i State Constitution were violated because state and federal statutory provisions--HRS §§ 803-34, 606.3, 456-18, 803-32 and United States Code (USC) Title 28 § 638(c) ¶16 and 1 USC § 114--were not complied with.

[8]   Indeed, Wagner attached, as Exhibit H to his June 27, 2011 Supplement to Defendant's Request for Franks Hearing, a copy of what appears to be the officer's affidavit in support of the search warrant, which corresponds to the Circuit Court's comments at the December 28, 2011 hearing. This exhibit also reflects the affiant averred that a controlled purchase of crystal methamphetamine by the confidential informant from Wagner at his residence was conducted within five days of the affidavit.

4

that the confidential informant states that Mr. Wagner distributed ice from both his residence, located on Kumakani Street, and various vehicles he utilizes." Although the amount of U.S. currency used to purchase the narcotics was undisclosed, that fact is not material to the finding of probable cause for the warrant. Wagner's claim that the affidavit includes no information about the existence and type of narcotics purchased is also contradicted by the documents he relies on. The affidavit alleged facts sufficient to support the issuing court's conclusion of probable cause.

### C. Execution of the search warrant.

Wagner argues that the Circuit Court erred when it concluded Officer Jackson's execution of the search warrant complied with HRS § 803-37.[9]

Wagner does not challenge the Circuit Court's Findings of Fact underlying the challenged decision. "Findings of fact that are unchallenged on appeal are the operative facts of a case." Cun-Lara v. State, 126 Hawai'i 541, 544 n.5, 273 P.3d 1227, 1230 n.5 (App. 2012) (citation and internal quotation marks omittted). The Circuit Court found, in relevant part, that

> 6.) [Officer Jackson] immediately exited the passenger side of this vehicle and in a loud, clear voice identified himself as a police officer, stating repeatedly "police, search warrant, demand entry." The statements were directed towards [Wagner].

> 7.) During the suppression hearing, Officer Jackson demonstrated the loud volume and tone of his voice when announcing "police, search warrant, demand entry."

---

[9]   § 803-37 Power of officer serving. The officer charged with the warrant, if a house, store, or other building is designated as the place to be searched, may enter it without demanding permission if the officer finds it open. If the doors are shut the officer must declare the officer's office and the officer's business, and demand entrance. If the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them. When entered, the officer may demand that any other part of the house, or any closet, or other closed place in which the officer has reason to believe the property is concealed, may be opened for the officer's inspection, and if refused the officer may break them.

(Emphasis added.)

8.) As Officer Jackson approached the lanai of the Subject Residence and while making his announcement, he and [Wagner] made direct eye contact with each other. [Wagner] who was still standing on the lanai made no movement or gesture of an intention to grant entry to the lanai.

9.) [Wagner's] testimony that he did not see any vehicle pull up to his property is not credible and it is inconceivable that he did not hear Officer Jackson announce "police, search warrant, demand entry."

. . . .

12.) [Wagner's] testimony that the police failed to demand entry and failed to inform him of the existence of the search warrant is not credible.

. . . .

17.) Mrs. Wagner's testimony that she could not hear the knock and that it took her only a few seconds to get out of bed and to the front of the house is not credible.

These facts are sufficient to support the Circuit Court's decision. HRS § 803-37; State v. Garcia, 77 Hawai'i 461, 465, 887 P.2d 671, 675 (App. 1995).

D. **Wagner's right to be present during execution of the warrant.**

Wagner argues that he had the right "to be present and see from whence the contraband was obtained." Although Wagner apparently relies on HRS § 803-37 for this alleged right, the plain language of the statute does not support such a claim. Wagner also apparently relies on State v. Diaz, 100 Hawai'i 210, 229-30, 58 P.3d 1257 (2002) (dissenting opinion of Acoba, J.) and The King v. Ah Lou You, 3 Haw. 393 (1872), but without any explanation. Neither case stands for Wagner's asserted proposition.

Wagner has not shown the Circuit Court erred in denying his Motion to Suppress.

2. **Introduction of the parties' stipulation regarding Wagner's prior conviction.**

Wagner also argues that the Circuit Court abused its discretion when it allowed reading to the jury the parties' stipulation regarding Wagner's prior felony conviction because it was "bad act" evidence, in violation of his rights under article 1, sections 5, 6, 7, and 14 of the Hawai'i State Constitution. The record reflects that the Circuit Court

6

followed the procedure mandated in <u>State v. Murray</u>, 116 Hawai'i 3, 169 P.3d 955 (2007), where a defendant also stipulated to a prior conviction for the same offense where such was an element of the current offense. There was no abuse of discretion here.

### 3. Limitation of cross-examination of Officer Jackson about Halemau and Pea pursuant to HRE Rule 404(b).

Wagner argues that the Circuit Court erred when it precluded defense counsel from cross-examining Officer Jackson about Halemau and Pea because (1) under Hawaii Rules of Evidence (HRE) Rule 404(b) "the admissibility of such evidence only pertains to the character of the accused, victim, and/or witness[;]" (2) the Circuit Court was required to conduct an HRE Rule 403 balancing test prior to ruling, the evidence was relevant and the State did not show it would be prejudiced by the evidence; and (3) the exclusion of this prior drug use evidence violated his right to confront witnesses under article 1, section 14 of the Hawai'i State Constitution.

First, by its plain language, the exclusion codified in HRE Rule 404(b)[10] applies to all "person[s]," and is not limited to "the accused, victim, and/or witness" as asserted by Wagner. He presents no authority supporting his contrary proposition. Moreover, Wagner does not demonstrate that he provided advance notice of his intent to use this evidence as required by HRE Rule 404(b).

---

[10]     **Rule 404   Character evidence not admissible to prove conduct; exceptions; other crimes.**

        . . . .

        (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of <u>a person</u> in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

(Emphasis added.)

Second, without explanation, Wagner argues that, under HRE Rule 403, admission of "[t]he evidence of Mr. Halemau's history of drug use or selling was relevant under HRE 401 to Mr. Wagner's state of mind" and "such information in support of Mr. Wagner's defense would [have assisted] the jury in assessing the evidence and the location of where the items were retrieved." Wagner does not explain how Halemau's alleged history of drug use or sale is relevant to the trafficking and paraphernalia crimes with which Wagner was charged. Although Wagner claims there was evidence Halemau was at Wagner's residence prior to the execution of the warrant, he does not provide a citation for that evidence and Officer Jackson denied seeing Halemau during pre-execution surveillance. As Wagner failed to establish the relevancy of this evidence, there was no balancing necessary.

As to Pea, Wagner was allowed to question Officer Jackson regarding Pea's prior law enforcement contacts involving drugs, that she was present at the residence on the date of the offense and was also arrested for the same methamphetamine and drug paraphernalia with which Wagner was arrested and, most importantly, pleaded guilty to charges stemming from the same, although Officer Jackson was not sure of the exact nature of those charges. Wagner was also allowed, without objection, to examine Officer Jackson about Pea's trustworthiness and his knowledge of Pea's drug use during the period of August through December 2010. Given this testimony, the exclusion of largely hearsay testimony regarding whether she traded sex for methamphetamine at some unspecified time, or was at a drug rehabilitation facility after this offense, or whether she smoked the drug on the date of the offense, was of marginal relevance and was cumulative. HRE Rules 401, 403.

Furthermore, the protections of the Confrontation Clause are not absolute; they do not categorically prevent exclusion of any testimony a defendant wishes to elicit. State v. Pond, 118 Hawai'i 452, 465, 193 P.3d 368, 381 (2008) ("HRE Rule 404(b) is not per se unconstitutional even though it may restrict a defendant's constitutional right to confront an adverse witness.")

8

The Circuit Court did not abuse its discretion when it precluded defense counsel from limiting inquiry into the prior bad acts of Halemau and Pea.

4. **Wagner's motion to compel the disclosure of the confidential informant.**

Wagner argues that the Circuit Court erred when it denied his motion to compel the State to disclose the name of the confidential informant because "the informant may have evidence to the testimony of guilt or innocence of the defendant."

HRE Rule 510[11] allows the prosecution to refuse disclosure of the identity of a confidential informant, subject to exceptions. Wagner claims the exceptions in HRE Rule 510(c)(2) and (3) apply. The prosecution submitted affidavits

---

[11]     **Rule 510   Identity of informer.** (a) Rule of privilege. The government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

.   .   .   .

(c)    Exceptions.

(1)    Voluntary disclosure; informer a witness.  No privilege exists under this rule if the identity of the informer or the informer's interest in the subject matter of the informer's communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness for the government.

(2)    Testimony on merits.  If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case or of a material issue on the merits in a civil case to which the government is a party, and the government invokes the privilege, the judge shall give the government an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.  .  .  .

(3)    Legality of obtaining evidence.  If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, the judge may require the identity of the informer to be disclosed.  .  .  .

for the Circuit Court's review, *in camera*. Thereafter, the Circuit Court entered its order denying Wagner's motion, noted that Wagner is not seeking the identity of the confidential informant, but rather confirmation of his suspicion regarding the informant's identity, and in any event that there was "an absence of evidence that the confidential informant may be able to give testimony necessary to a fair determination of the issue of guilt or innocence" under HRE Rule 510(c)(2).

Upon our review of the materials submitted *in camera*, we agree.

5.    **Sufficiency of the evidence.**

Wagner argues that the sentence and judgment against him "should be vacated due to insufficient evidence in the record that Mr. Wagner knowingly possess [sic] the contraband found." Wagner further argues that "multiple occupants occupied the room . . . [a]nd co-defendant Deshalynn Pea admitted to the charge" and advances reasons why various witnesses should or should not have been believed.

In reviewing the sufficiency of the evidence, a court must view the evidence in the light most favorable to the prosecution.  State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981).  "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact."  State v. Richie, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998) (block quote format and citation omitted).  "It is the province of the jury, not the appellate courts, to determine the credibility of witnesses and the weight of the evidence."  State v. Smith, 106 Hawaiʻi 365, 372, 105 P.3d 242, 249 (App. 2004).

Wagner was charged with one count of Methamphetamine Trafficking, which requires proof that he possessed an ounce or more of methamphetamine, and two counts of drug paraphernalia, which requires proof that he possessed zip packets, scales, straws, or glass pipes with the intent to use them to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise

introduce into the human body a controlled substance[.]" <u>See</u> HRS §§ 712-1240.7 (2014) and 329-43.5 (2010).

Officer Jackson testified that he was familiar with methamphetamine and drug paraphernalia through his experience and training, discovered among other things, upon entering what other occupants of the house indicated was Wagner's bedroom, $967 on the bed, more currency bound by rubber bands found in a shoe; a wallet containing documents bearing Wagner's name; a methamphetamine smoking pipe; zip packets found in a man's jacket; a digital scale and angle cut straw--usually used to transfer methamphetamine for weighing--from the pocket of a man's gray and black flannel shirt; $10,000 in currency from the pocket of a new, gray man's dress shirt; more zip packets from the pocket of a darker gray man's shirt; and a notebook that contained what appeared to be drug notes. Officer David Matsushima recovered all of the sixteen packets discovered in the bedroom and submitted them into evidence. The net aggregate weight of the contents of all sixteen envelopes was eventually determined by police criminalist Edward Oshiro to be 45.38 grams or approximately 1.6 ounces and identified as methamphetamine. Taking all the evidence in the light most favorable to the prosecution, the record contains sufficient and substantial evidence to support the jury verdict.

6. Jury selection.

Wagner argues that his right to be tried by a panel of impartial jurors under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I Sections Five and Fourteen of the Hawai'i State Constitution, was violated because the chosen jurors made various allegedly biased remarks. Specifically, Wagner asserts that (1) "the record is void to any reference [Juror #7, Peter Chaput] could be fair and impartial[;]" (2) juror #23 Chad Lukeala informed the Circuit Court that he knew two of the witnesses and did not want to judge people that he would see on a daily basis; and (3) Juror #9 Debra Cox, along

with Jurors Lukeala and Chaput stated that they tended to believe police officers.

However, all three jurors were passed for cause. "A defendant in a criminal case cannot sit in silence and accept a juror as unprejudiced and fair and then subsequently allege error in the retention of the same juror." Territory v. Fukunaga, 30 Haw. 697, 704, appeal dismissed, 33 F.2d 396 (9th Cir.), cert. denied, 280 U.S. 593 (1929), quoted with approval in State v. Graham, 70 Haw. 627, 634, 780 P.2d 1103, 1107-08 (1989).

Wagner has failed to show error in the selection of the jury.

7.   Curative instructions on prior bad acts.

Wagner argues that he was "prejudiced . . . when the mention of [his] prior conviction, [] although not the nature of the offense, was continuously mentioned throughout the trial" and no curative instruction was given prior to the testimony. However, as noted by Wagner, the Circuit Court did give a limiting instruction to the jury at the same time the stipulation to his prior conviction was read. Wagner's point is without merit.

8.   General accusations that the Circuit Court abused its discretion.

Wagner restates a half-dozen arguments under the general heading that "[t]he court abused its discretion." These assertions were previously addressed and/or are undecipherable and are without merit.

9.   Prosecutorial Misconduct.

Wagner alleges improper conduct by the prosecution based on (a) withholding unspecified "testimony" that "could be viewed as a Brady violation"; (b) improper issuance of the search warrant; (c) "open[ing] the door to priors" in the opening statement; (d) "open[ing] the doors to priors by witness" (e) withholding evidence, insinuating Wagner was falsifying evidence and calling him a liar; "misquot[ing] scene" of the crime and the layout of evidence; (f) providing insufficient discovery; misquoting the law; presenting no evidence Wagner sold

or possessed methamphetamine; and (g) stating in closing argument that there was "no evidence of police contact" where it had introduced "throughout the trial" evidence of his "priors" and presenting multiple instances of hearsay testimony, which Wagner apparently equates with perjured testimony.

> Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction. Factors to consider are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant.

State v. Rogan, 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999) (citations and internal quotation marks omitted).

Wagner's allegations are either addressed above or are conclusions without argument or otherwise indecipherable. Against these weak allegations is the strong circumstantial evidence presented at trial which, as discussed above, established Wagner had constructive possession of the requisite amount of methamphetamine and drug paraphernalia. Wagner's assertions of prosecutorial misconduct are without merit.

10. **Ineffective Assistance of Counsel.**

Wagner argues that he suffered from ineffective assistance of counsel because (A) court-appointed defense counsel Peter Bresciani (Bresciani) failed to incorporate certain grounds in the motion to suppress; (B) due to Bresciani's neglect "in order for motion to suppress to be heard, Mr. Wagner must waive his right to a speedy trial[;]" and due to Bresciani's "dishonesty" Wagner requested to see the original search warrant documents; (C) Bresciani did not properly argue the motion to suppress to force identification of the informant pursuant to HRE Rule 510; (D) Bresciani withdrew as counsel; (E) replacement defense counsel Ivan Van Leer (Van Leer) failed to file motions on time; (F) "Counsel failed to cite relevant case authority to [illegible] bad act motion[;]" (G) jurors Cox, Lukeala, and Chaput have current or past relationships with law enforcement or have a tendency to believe law enforcement; (H) there were no objections to the introduction of Wagner's prior conviction; (I) there were no objections to the prosecutions questions "which

allowed testimony of Mr. Wagner's priors into trial"; (J) there were no objections to the prosecution's closing argument regarding Wagner's prior contacts with law enforcement; and (K) defense counsel did not inform or present Wagner with documents such as the presentence report, and plea offer in lieu of mandatory terms.

The Supreme Court of Hawai'i has explained that

> When an ineffective assistance of counsel claim is raised, the question is: When viewed as a whole, was the assistance provided to the defendant within the range of competence demanded of attorneys in criminal cases? Additionally,

> > the defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. This court will not judge the assistance provided the defendant ineffective solely by hindsight. A defendant who meets the two-prong test has proven the denial of assistance within the range of competence demanded of attorneys in criminal cases.

State v. Silva, 75 Haw. 419, 439-40, 864 P.2d 583, 593 (1993) (citations, internal quotation marks, and brackets omitted). In addition, "matters presumably within the judgment of counsel, like *trial strategy*, will rarely be second-guessed by judicial hindsight." State v. Richie, 88 Hawai'i 19, 39-40, 960 P.2d 1227, 1247-48 (1998) (citation and internal quotation marks omitted).

In sub-argument A, Wagner makes vague references to five different motions or arguments relating to the suppression of evidence and claims that Bresciani failed to file motions regarding these issues or arguments and engaged in "repetitious dishonesty" with Wagner. However, the record reveals that Bresciani did file a timely motion to suppress. To the extent that it did not contain all the grounds Wagner now asserts it should have, we presume Wagner has raised those grounds in his Opening Brief. As we have previously concluded those grounds are without merit, they are not a valid basis for alleging ineffective assistance of his counsel. To the extent Wagner

14

accuses his counsel of "dishonesty," his citations to the record merely repeat Wagner's own allegations and beliefs and as such do not establish his claim that his counsel was dishonest.

In sub-argument B, Wagner makes conclusory allegations that delay was caused by his counsel's "neglect." The transcript to which Wagner cites is not part of the record on appeal. Review of the court's minutes for that date shows only that Wagner was not brought to the court from prison, but not the reason he was not transported. Therefore, we reject his argument.

Wagner next argues in sub-argument C that his counsel failed to supplement Wagner's *pro se* motion to disclose the identity of the confidential informant filed with the Circuit Court. However, he does not identify, either by argument or by citation to the record, with what materials the supplementation should have been made. We therefore also reject this argument.

In sub-argument D, Wagner points to Bresciani's withdrawal as counsel without any argument that this constituted ineffective assistance of counsel. We therefore deem this argument waived.

Wagner argues that Van Leer was ineffective, in sub-argument E, because he filed certain motions after the court's deadline, leading to their denial. However, Wagner has failed to argue that any of these motions would have been successful. We therefore conclude that Wagner has failed to show these errors impaired a potentially meritorious defense.

We have previously decided that the Circuit Court followed proper procedure with regard to informing the jury of the parties' stipulation to Wagner's prior felony conviction. We therefore reject Wagner's sub-argument F, which is also based on his counsel's representation in this respect.

Sub-argument G is based on the seating of Jurors Chaput, Cox, and Lukeala. The selection of jurors is generally a strategic decision. American Bar Association, Standards for Criminal Justice—Prosecution Function and Defense Function, Standard 4-5.2(b) (3d ed. 1993) ("Strategic and tactical decisions should be made by defense counsel, after consultation

with the client where feasible and appropriate. Such decisions include . . . what jurors to accept or strike[.]") "[M]atters presumably within the judgment of counsel, like *trial strategy*, will rarely be second-guessed by judicial hindsight." State v. Richie, 88 Hawai'i at 39-40, 960 P.2d at 1247-48 (citations and internal quotation marks omitted). The record reveals that Van Leer was an active participant in general voir dire and Wagner fails to allege his counsel failed to consult with him in passing these jurors for cause or in exercising peremptory challenges on other jurors. We decline to look behind counsel's strategic decision.

Wagner's sub-argument H, regarding the introduction of the stipulation to his prior felony conviction, has been addressed above and decided against him and thus cannot be a basis for claiming his attorney was ineffective.

Wagner's sub-argument I, regarding the failure of counsel to object to the State's questioning of Wagner as allowing further testimony regarding Wagner's "priors," is without basis. Van Leer objected to the questions during the passage Wagner cites and, in any event, the prosecution did not ask questions regarding any prior convictions.

In sub-argument J, Wagner points to his counsel's failure to object to "statements that the Prosecution made regarding prior contacts with law enforcement." The only statement the prosecution made at the point Wagner identifies was "Defendant's theories. There's no evidence of a police conspiracy. There's no evidence the defendant was persecuted for any prior contacts with law enforcement." Wagner does not claim the prosecutor's arguments were incorrect, and they appear to be in response to the defense theory of the case and therefore fair argument. Under the circumstances, it was not error for Wagner's counsel to refrain from objecting to this argument.

Finally, in sub-argument K, Wagner complains that his counsel failed to provide him with the documents pertaining to sentencing. The record indicates that Wagner chose not to review the PSI with his counsel, Van Leer, who offered to give him a copy of the PSI prior to sentencing. At the sentencing hearing,

16

Wagner was given a copy of the PSI along with the State's motion to impose mandatory minimums.

Wagner has failed in his burden to show his counsels were ineffective.

Based on the foregoing, we affirm the Judgment of Conviction and Sentence entered by the Circuit Court of the Third Circuit on November 19, 2012.

DATED:  Honolulu, Hawai'i, October 29, 2015.

On the briefs:

John Albert Wagner, Jr.,
Defendant-Appellant, *pro se.*

Associate Judge

Jason R. Kwiat,
Deputy Prosecuting Attorney,
County of Hawai'i,
for Plaintiff-Appellee.

Associate Judge